IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

UNITED STATES OF AMERICA     )
            )
v.               )     No. 2:11-CR-027
            )
PAUL DOUGLAS PRATER     )

## MEMORANDUM AND ORDER

Now before the court is the February 17, 2012 report and recommendation of Chief United States Magistrate Judge Dennis H. Inman [doc. 58], recommending that the defendant's motion to suppress [doc. 41] be denied. The defendant has objected [doc. 60, 66] to the report and recommendation, and the government has responded to those objections [doc. 68].

The district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

The magistrate conducting a suppression hearing on February 17, 2012. A transcript of that hearing has been filed. Trooper Robert Greer of the Tennessee Highway

Patrol ("THP") testified, as did Agent Ted Francisco of the Department of Homeland Security. The relevant facts are well set forth in Magistrate Judge Inman's report and recommendation and need not be repeated at length herein.

The defendant is charged with being a felon in possession of ammunition. By the present motion, he seeks to suppress ammunition seized from the vehicle he was driving on Interstate 81 on March 17, 2011. Based on visual and audio surveillance, agents with the Department of Homeland Security were aware that the defendant had purchased ammunition from a pawn shop the previous day, and that he would be transporting that ammunition to an associate in New York on the morning of March 17.

Homeland Security agents requested THP's assistance in making an interdiction traffic stop of the defendant's vehicle in order to keep secret their ongoing investigation of the defendant's New York associate. Trooper Greer, working in concert with Agent Francisco, was made aware of the make, model, color, and license number of the car that the defendant would be driving. Trooper Greer testified that Homeland Security asked "if we could find a reason to basically pull him over and conduct our business as interdiction officers."

Near mile marker 55 on I-81, Trooper Greer observed the defendant speeding. The trooper activated his blue lights. The defendant pulled over. The passenger and owner of the car consented to a search, and the ammunition now at issue was discovered.

2

According to the defendant, "the issue in this case is whether the intent to stop any vehicle matching a particular description, as was the situation in this case, overrides an officer's right to make a pretextual stop." [Doc. 66, p. 2]. The defendant urges the court to review the hearing transcript (which, of course, the court would have done anyway) because he "believes that the true status of the facts involved in the day of the stop demonstrate that the officers intended to stop any vehicle that matched the description of [his] vehicle and that any stop would be made regardless of whether any traffic violation had occurred." [Doc. 60, p. 1].

In support of his argument, the defendant points out that Trooper Greer had already stopped at least one other car on March 17 matching the description of the defendant's, and that the surveilling Homeland Security agents had twice lost sight of the defendant's vehicle (around mile markers 36 and 50). The defendant also cites a snippet of Trooper Greer's testimony. When asked by defense counsel whether the defendant's car would have been stopped even if it had not been speeding, the trooper began his response with, "You know, I don't know." These facts are irrelevant.

Trooper Greer observed the defendant speeding and thus had probable cause to stop the vehicle. "[I]t is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). That Homeland Security did not have the defendant in their sights when Trooper Greer observed him speeding is of no consequence. Again, *Trooper Greer saw a driver breaking*

3

the law, and his stop of *that driver* was thus lawful. *See id.*[1]

Similarly, if another driver (or drivers) were also stopped on March 17, the court presumes that the driver (or drivers) were also speeding or breaking some other law, as there is no evidence to the contrary. Thus, that stop (or stops) would have also been constitutionally sound. *See id.* If any such stop was not lawful, the court is certain that the offended driver would be perfectly able to pursue their legal remedies for any constitutional violation that might have occurred. Any such violation of another driver's rights, however, is not *this defendant's* concern.

Lastly, turning to Trooper Greer's "You know, I don't know" testimony, the trooper went on to explain that based on prior experience he might well have been instructed to stop the defendant based on the probable cause mentioned in footnote one of this memorandum and order. There is no nefarious undertone to Trooper Greer's testimony. The court rejects outright the defendant's speculation that Trooper Greer and Homeland Security had "the intent to stop any vehicle matching a particular description . . . regardless of whether any traffic violation had occurred." That accusation is wholly unfounded.

For the reasons provided herein, the court **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's report and recommendation [doc. 58]. It is **ORDERED** that the defendant's motion to dismiss [doc. 41] is **DENIED**. His

---

[1] This memorandum and order addresses, as it must, the argument presented by the defendant. In so doing, however, the court does not want the reader to overlook the fact that officers also had probable cause to stop the defendant (or have him stopped) based on their knowledge that he was a felon, paired with their reasonable suspicion that he was in possession of ammunition.

4

objections [docs. 60, 66] are **OVERRULED**.  This case remains set for trial on June 13, 2012, with a plea cutoff date of May 30, 2012.

**IT IS SO ORDERED.**


ENTER:


_____s/ Leon Jordan_____
United States District Judge